Good morning, Your Honor. Steve Hubachek, Federal Defenders, on behalf of Ms. Espinoza. Your Honors, I'd like to address just one of the issues raised in the briefs with respect to the closing argument. Specifically, the argument by government counsel that everyone involved in a drug trafficking organization necessarily has knowledge of the presence of the marijuana. That argument is set out on pages 504 to 505 of the excerpt of record. The first time that the prosecutor made that argument, or similar arguments, there was a sustained objection. But then when he got to the specifics, where you draw an inference of knowledge from the defendant's supposed participation in this drug smuggling organization, that an inference of knowledge necessarily comes from that, the objection was then overruled, and the prosecutor... Now, where are you focusing? Because the defense was that at least two of these folks were the actual people who put the marijuana in, right? That's correct, Your Honor. So presumably the defendant was arguing that they knew it was marijuana. Right, that they knew. Yeah, and so everyone in this chain of events, whether it was these two guys or anyone else, knows it's marijuana. That's what you're objecting to? Yes, Your Honor. Actually, that same argument is on page 504 as well. It says, and whether they sell it themselves or they give it to someone else, that person is going to know it's marijuana. The person to whom they gave it, of course, is our client, Ms. Espinoza. Then that same argument after the objection was overruled is repeated. Everyone in this chain of events, whether it was these two guys or anyone else, knows it's marijuana. And basically what that is is it's an argument that everybody who's a participant in the organization necessarily knows. Now, this argument is improper for two reasons. Number one, it clearly implies to the jury that the prosecutor has knowledge regarding drug trafficking organizations and the fact that everyone involved in them has knowledge that was never presented at trial. So in effect, he's testifying himself in his rebuttal closing argument when the defense has no opportunity to respond, and he's effectively testifying to the characteristics of this drug trafficking organization. The second reason that this argument is improper is that this argument is effectively the same thing as the structure-type testimony that this Court has repeatedly held as inadmissible in trials effectively identical to Ms. Espinoza's. Those cases I sent up this week in a 28-J letter, but they're McGowan, Pineda-Torres, Varela, and the Vallejo case. All four of those cases very definitively say that that type of evidence, structure evidence, where the inference of knowledge is drawn from the defendant's supposed participation in this organization is inadmissible. Not only is it inadmissible, but this Court has found that it was harmful error several times. Your Honor? Well, but if you're pointing out, as a matter of fact, pointing to the evidence showing this person knew, this person knew, and the prosecutor isn't going to argue everybody except the defendant knew, it's a – I mean, the jury understands the argument. If that's a little different, isn't that different from saying she was a part of this organization, her boyfriend brought her into the organization, therefore she had to know everything that was going on? I don't think that there is a difference between the – I think the government, certainly they can argue that she knew. And they can argue – What was her defense? Her defense was a lack of knowledge. Oh, yeah. Right. And obviously the government is entitled to respond to that defense and argue inferences from the facts. But what's happening here is something beyond that. He's not saying that it's unreasonable for her not to know for whatever reason. What he's saying is that everyone involved in the organization knows. And from that general, you can get the specific – Well, that's your argument that it's equivalent to that. That's correct. And I think that the language that he used bears that out. He says everyone in this chain of events, whether it was these two guys or anyone else, knows it's marijuana. So he's talking about everybody. So it really is precisely the same type of argument that this Court disapproved of in the various structure cases. It's not an argument that says based upon these facts, based upon the fact that there's not very much gas in the car or based on the fact that some of her statements were inconsistent, that therefore she had knowledge. What he's telling the jury is I have knowledge regarding how drug trafficking organizations work. And what I'm telling you is that everyone that's in them knows. That's why he uses the word. What beyond that one referent, everyone in this chain of events, whether it was these two guys or anyone else, knows it's marijuana, what beyond that are you relying on for the structure argument? I do note that you made the, or whoever was representing her, objected on the structure. That's correct. So what else, where else does the structure type of argument, in your view, creep into the argument? I think on page 504, the last sentence that prompted the objection that was overruled, and whether they sell it themselves or they give it to someone else, that person is going to know it's marijuana. And, again, that is the structure type argument. And the person they gave it to is my client. And so what he's saying is that everyone involved knows and the person that they give it to knows. It says Humberto and Jose Luis Suarez know there's marijuana in the vehicle, right? Right. They put it there. That's the defendant's version. And these two guys who are going to follow the defendant and, according to Mrs. Villasenor, jump her after she crosses the border, know that there's marijuana in the vehicle. And whether they sell it themselves or they give it to someone else, that person is going to know it's marijuana. That's what they're arguing the jury should conclude. Right. But the reason that they're making that inference isn't from specific facts in this case. It's from the fact that everybody knows. And then he makes, if there's any doubt about it at all, he makes it perfectly clear in his very next sentence, which he says everyone in this chain of events is going to know. So he's referring to the organization itself. So if the prosecutor said so, you have to decide whether or not all these people knew. You have to decide whether or not she knew. Well, I still think that he can't come out and say everyone knew because that is the structure-type testimony. That's something that the jury wouldn't have any basis of knowing because this evidence. He can't point to the evidence and say who did know. Right. He can say, you know, from your statements, from the circumstances, whatever, you can draw an inference of knowledge as to this particular defendant. But you can't say everyone involved in the organization knows, therefore, she knew. And that's precisely what the argument was. Okay. Now, beyond those two. I'm sorry. Go ahead. There was a lot more in this case than just evidence of her being involved in this gang. I mean, she kept telling repeatedly different stories. Every time they asked her something, first she said she came on the bus. Then she said she got in the next day or the day before and so on. I mean, it's not as though the case was hinged on the question of whether she was or was not a member of this organization. There was a lot of independent evidence, wasn't there? Well, I agree with you that that's a very significant issue in the case. But it's also really a swearing contest that the jury is entitled to evaluate without having this sort of extraneous outside-of-the-record argument put into it. And I'd point out that it's a close enough issue that, in fact, this case originally resulted in a hung jury the first time that it was tried. So you have the defendant who has an account and she denies making a lot of these inconsistent statements. You have an agent who interviewed her in Spanish who didn't tape record or otherwise make any sort of actual record. And he says that she did make these various statements. So it really is, you know, it's him versus her. It's a close enough question that the jury hung the first time. Now, the government's response to that is to say, well, we had this guy, David Rojo, who came in and testified and undercut her account of what happened at the nightclub. But that guy is a felon. He's on felony probation. And if he admitted having gone to Tijuana, then he would have been in violation of his probation. So I really don't think that that really pushes the needle so far over into the government's side. So we have a case that's close enough that it hung the first time. This argument is made at a key point in the closing argument. It's the only time where the government says, well, look, even if she's telling the truth, she's still guilty because of these various arguments. It's in the rebuttal closing. It's specific. It's set apart from the rest of their arguments. And it goes to really the heart of the case, which is knowledge. The government in its closing argument admitted that the key issue in the case was knowledge. That's at page 451 of the excerpt of record. So they know that knowledge is the issue. Putting to the make of the fact that the prosecutor goes on to argue at some length as to why they must have told her. In other words, went on after the part you're quoting, say they must, these guys obviously knew, they must have told her and argues all of that. Those arguments are proper. Do we look at the context and try and understand what the prosecutor was referring to? Or do you think there's enough just in the wording of what was said that that's clearly structure argument? I think it's clearly structure. I think, though, you do look to context. That's what the invited response cases say. And I think the most recent one from this Court is the Weatherspoon case that talks about that. But invited response doesn't allow improper argument. This argument is improper because it infers knowledge of structure on the part of the prosecutor that was never presented. And if they had tried to offer it, it would have been excluded. I understand your argument. And let me just ask you, your time has expired, but if we disagree with you, do you want a do you agree that there should be a remand on sentencing pursuant to that? Yes, we would request an amyline remand. Thank you. Good morning. My name is Larry Spong. I represent the United States in this case. It's not the government. It was defense counsel who first talked about structure in this case. It's defense counsel who clearly invited this argument. On pages 495 to 97 in the record, in the excerpts of record, she talks about how Humberto knew, Jose Luis Suarez knew, and set her up. Then goes on to posit imaginary people, an imaginary structure, because she has to explain how would they get the marijuana if there's only three gallons of gas in that van. So she posits, well, there probably were going to be some people who would stop her and ask her, are you having trouble, and that way they could get it offloaded. So she's the one who brings up a structure of an organization. She's the one who brings up that, in fact, everybody else knew. And it's in response to that, and only that, in which the government made that comment. Now, it is important to see the whole context. First of all, before a closing argument, the judge is ---- Oh, I'm sorry. Pages 4, I think it begins around the bottom of 494 through 497 in the excerpts of record. My problem is it's cut off. Your numbers are cut off. Oh, I'm sorry. This is in the appellant's excerpts of record. I'm sorry. What's the page? Do you have the RT number up in the right-hand corner? I have those clearly. I have 4949. So I'm having to count backwards. So just tell me what, okay, what is it, 490 what? I don't have that because this is in the appellant's excerpts of record, not the government's supplemental excerpts. I'm sorry. Well, just tell me what the pages are then, 49, and I'll count backwards from the one I can read. Well, oh, I see, 495. 495, okay. I see. I understand. I'm sorry. All right, fine. Okay. Now, so first of all, the judge instructed the jury prior to closing arguments that this is argument and that statements of counsel are not evidence. And so more importantly, this is not testimony. This is an inference to be drawn from the evidence that exists. That's what defense counsel did when she went ahead and posited this imaginary structure and then drew an inference saying this person was set up. Certainly it's appropriate in response for the government then to say, well, let's look at this that you've posited now and see what really the inference, the proper inference is. And that's what this is. It's not testimony. It's not evidence. It is inference. It is reasonable inference, and it's invited by defendant's statements. Okay. Would you comment for a minute on the Brady issue? Yes. Why wasn't, why weren't the numbers turned over until? Well, first of all, the, this is sort of a form of evidence as opposed to what? First of all, the defendant counsel and investigator did view the cell phones three weeks after the arrest. That was on May the 13th. And you can find that in the testimony of the first trial, in the supplemental testimony of the second trial, the supplemental excerpts of record 695. So they did have the opportunity to see the cell phones. Now, the evidence that actually had been written down came up during the first trial. Defense counsel even made mention of it in her closing argument at the first trial. So they were certainly aware of it. They did make no request for that evidence. That evidence was then finally turned over right before the trial. So first of all, it wasn't suppressed prior to the second trial. It was made available. But more importantly, it's clear why there was no request. At the first trial, defendant testified she went to meet a David Roho to enter into a contract with him. Now, of course, that was the first mention of Mr. David Roho out of the defendant's mouth. In time for the second trial, now, oh, and she also testified that she called David Roho when she got to the nightclub because she hadn't made previous arrangements. So if she called him, his number would be on that cell phone. Well, now, prior to the second trial, guess who government finds a week before trial? David Roho. Now, for the first time, defense counsel complains that those numbers aren't turned over. Why? Because David Roho is going to blow apart the defendant's story. He's going to say she wasn't here and all of that. And, of course, that list would have shown that if it had come to the government's attention and seen that. So let's assume for the sake of argument that this is Brady material. Let's assume that. I doubt it myself, but let's assume that. Isn't there an obligation on the part of the government to turn over Brady exculpatory material without any request from the defense? Yes, there certainly is. And it is true, as the defendant appellant points out, that even if the government counsel didn't know it and it was in the hands of someone in the government, that still would be a Brady violation, even though not intentionally. The material which is not turned over has to be such that on its face, when looking at it, government counsel would know this is exculpatory material. Absolutely. And that. Your point is just a list of telephone numbers is not, by definition, exculpatory. It may lead, ultimately, to exculpatory evidence, but it isn't exculpatory within the scope of Brady's rule. Absolutely. It's not exculpatory when you first look at it. And, in fact, it's inculpatory. And it's inculpatory because it can't verify her calls that she testified about Humbarto Alvarez because she herself says the numbers won't come up in the cell phone. But it doesn't really matter whether it's inculpatory. The only question is whether it's exculpatory. Right. Isn't that right? Well, that's true. But if it's inculpatory, by definition, it can't be exculpatory. And I guess my argument is it's not exculpatory. It's clearly not exculpatory on its face. It's clearly not exculpatory just by looking at it, without having heard what the defendant's story is. Is the standard different under Youngblood if it's a destruction of evidence case? I don't think the standard is different. I mean, it's still – whether there's good faith or bad faith, if it is indeed impeachment evidence, it's a violation, whether it's good or bad. They argue that the loss or whatever of the cell phones was a Youngblood. But they had already seen the cell phones. They had seen them. They had seen them on May 13th, three weeks after the arrest. So they had seen the cell phones. Now, whether they looked through them and got the numbers off, I don't know. We don't know that. Did anybody try to get to the provider, the cell phone company, to see if they could trace the calls? Yes. There were – there is testimony that Agent Badaglio found ten numbers, four of which – in other words, there's ten calls, but only four numbers. Some of them were repeated. And then he went and tried to find who those people were. One of them came back. They couldn't find the other three. They could. Okay. But the bottom line is none of them were David Roho's number. And that's – that I think is the important part there. Okay. Thank you. Any questions? Okay. Thank you, counsel. The case just argued is submitted for decision.
judges: Schroeder, Friedman , Fisher